**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KIMBERLY HICKEY,

      Plaintiff,

vs.

DELTA AIR LINES, INC., a
foreign corporation,

      Defendant.

Case No. 2:25-cv-11346-DML-KGA

Hon. David M. Lawson

Magistrate Kimberly G. Altman

---

| | |
|---|---|
| Brandon J. Abro (P77606) | Scott R. Torpey (P36179) |
| Michael Laurila (P86937) | Timothy J. O'Connell (P79737) |
| CHRISTENSEN LAW | TAFT STETTINIUS & HOLLISTER LLP |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 25925 Telegraph Rd., Ste. 200 | 27777 Franklin Rd., Ste. 2500 |
| Southfield, MI  48033 | Southfield, MI  48034-8214 |
| (248) 213-4900 | (248) 351-3000 |
| babro@davidchristensenlaw.com | storpey@taftlaw.com |
| mlaurila@davidchristensenlaw.com | toconnell@taftlaw.com |

---

**DEFENDANT DELTA AIR LINES, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant Delta Air Lines, Inc. ("Delta")

moves for summary judgment and the dismissal with prejudice of all claims alleged

by Plaintiff Kimberley Hickey ("Plaintiff").[1] The facts and law in support of this

---

[1] Delta respectfully requests that its contemporaneous Motion to Exclude Opinion Testimony of Plaintiff's Proffered Expert Witness, Kathleen Lord-Jones ("Motion to Exclude") be incorporated into the present Motion for Summary Judgment, and that the Court address the two motions in conjunction with one another, and not separately. *See*, *e.g.*, *Boaz v. Vitatoe Aviation, LLC*, No. 21-11386, 2023 WL 4477127 (E.D. Mich. July 11, 2023).

motion are set forth with particularity in the accompanying memorandum of law, which Delta files in accordance with E.D. Mich. L.R. 7.1(d) and this Court's individual rules. Per E.D. Mich. L.R. 7.1(a), the undersigned states that on March 31, 2026, he contacted Plaintiff's counsel to ascertain whether Plaintiff intends to concur with Delta's Motion for Summary Judgment and explained the substance of Delta's motion. Plaintiff's counsel responded and stated that Plaintiff does not concur in the relief sought, so Delta confirms that it has satisfied its L.R. 7.1(a) obligations.

Accordingly, Delta respectfully requests that the Court enter an order granting summary judgment in favor of Delta and against Plaintiff, dismissing Plaintiff's claims with prejudice as a matter of law, and granting Delta any other and further relief deemed appropriate.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

Dated:  March 31, 2026        By:    /s/ Timothy J. O'Connell
                                     Scott R. Torpey (P36179)
                                     Timothy J. O'Connell (P79737)
                                     *Attorneys for Defendant Delta Air*
                                      *Lines, Inc.*
                                     27777 Franklin Rd., Ste. 2500
                                     Southfield, MI  48034-8214
                                     (248) 351-3000
                                     storpey@taftlaw.com
                                     toconnell@taftlaw.com

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KIMBERLY HICKEY,

      Plaintiff,

vs.

DELTA AIR LINES, INC., a
foreign corporation,

      Defendant.

Case No. 2:25-cv-11346-DML-KGA

Hon. David M. Lawson

Magistrate Kimberly G. Altman

---

| | |
|---|---|
| Brandon J. Abro (P77606) | Scott R. Torpey (P36179) |
| Michael Laurila (P86937) | Timothy J. O'Connell (P79737) |
| CHRISTENSEN LAW | TAFT STETTINIUS & HOLLISTER LLP |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 25925 Telegraph Rd., Ste. 200 | 27777 Franklin Rd., Ste. 2500 |
| Southfield, MI  48033 | Southfield, MI  48034-8214 |
| (248) 213-4900 | (248) 351-3000 |
| babro@davidchristensenlaw.com | storpey@taftlaw.com |
| mlaurila@davidchristensenlaw.com | toconnell@taftlaw.com |

---

## BRIEF IN SUPPORT OF DEFENDANT DELTA AIR LINES, INC.'S
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iii

CONCISE STATEMENT OF THE ISSUE PRESENTED.......................................v

STATEMENT OF CONTROLLING AND/OR MOST APPROPRIATE
     AUTHORITIES ................................................................................................vi

I.     PRELIMINARY STATEMENT ...................................................................1

II.    STATEMENT OF UNDISPUTED FACTS....................................................1

III.   PLAINTIFF'S CLAIMS AND RELEVANT PROCEDURAL
      HISTORY .....................................................................................................11

IV.   SUMMARY JUDGMENT STANDARDS....................................................13

V.    PREEMPTIVE EFFECT OF THE MONTREAL CONVENTION .............14

      a.    The Montreal Convention Provides the Exclusive Cause of
           Action for Bodily Injuries Occurring on International Flights ...........14

      b.    Plaintiff's Negligence Claim is Preempted by the Montreal
           Convention and Should Be Dismissed With Prejudice.......................15

VI.   LIABILITY STANDARDS UNDER ARTICLE 17 OF THE
      MONTREAL CONVENTION.....................................................................16

      a.    Objective Standards Determine Whether an Event Is an
           "Accident" ..........................................................................................18

      b.    Industry-Standard Temperature Ranges for Hot Coffee.....................19

VII.  PLAINTIFF CANNOT PRESENT ANY EVIDENCE OF AN
      ARTICLE 17 ACCIDENT, WHICH IS AN ESSENTIAL ELEMENT
      OF PLAINTIFF'S EXCLUSIVE CAUSE OF ACTION.............................21

      a.    Plaintiff Cannot Present Competent Evidence Showing That the
           Water Served By Delta Was Hotter Than the Usual and
           Expected Range of Temperatures for Hot Beverages.........................22

b.      Plaintiff Cannot Present Any Competent Evidence Showing
        That  Delta did not provide "appropriate medical care in a
        timely manner" for Plaintiff's injuries ................................................23

VIII.  CONCLUSION..........................................................................................27

ii

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Air France v. Saks*,
470 U.S. 392; 105 S.Ct. 1338 L.Ed.2d 289 (1985) ....................... vii,16,17,18,21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................13

*Atia v. Delta Air Lines, Inc.*,
692 F. Supp. 2d 693 (E.D. Ky. 2010) ..........................................................14

*Avalon Techs., Inc. v. EMO-Trans, Inc.*,
No. 14-14731, 2015 WL 1952287 (E.D. Mich. Apr. 29, 2015) ........................14

*Barnett v. Leiserv, Inc.*,
968 F. Supp. 690 (N.D. Ga. 1997) ...............................................................20

*Boaz v. Vitatoe Aviation, LLC*,
No. 21-11386, 2023 WL 4477127 (E.D. Mich. July 11, 2023) ..........................1

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................13

*Dagi v. Delta Airlines, Inc.*,
961 F.3d 22 (1st Cir. 2020) .........................................................................15

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,
525 U.S. 155; 119 S. Ct. 662 (1999) ...................................................... vii,17,22

*Fishman by Fishman v. Delta Air Lines, Inc.*,
132 F.3d 138 (2d Cir. 1998) .......................................................................18

*Fulop v. Malev Hungarian Airlines*,
175 F. Supp. 2d 651 (S.D.N.Y. 2001) .......................................................19,21

*Fulop v. Malev Hungarian Airlines*,
244 F. Supp. 2d 217 (S.D.N.Y. 2003) .......................................................24,25

*Furuta v. Hawaiian Airlines Inc.*,
No. CV 19-00617 JAO-KJM, 2022 WL 3645764 (D. Haw. Aug. 24, 2022) ....16

*Garrisi v. Nw. Airlines, Inc.*,
No. 10-12298, 2010 WL 3702374 (E.D. Mich. Sept. 16, 2010) ........................14

*Greene v. Boddie-Noell Enterprises, Inc.*,
966 F. Supp. 416 (W.D. Va. 1997)....................................................................19

*Holowaty v. McDonald's Corp.*,
10 F. Supp. 2d 1078 (D. Minn. 1998)............................................................19,20

*Husain v. Olympic Airways*,
116 F. Supp. 2d 1121 (N.D. Cal. 2000)............................................................18

*Immormino v. J & M Powers, Inc.*,
91 Ohio Misc. 2d 198; 698 N.E.2d 516 (Ohio Com. Pl. 1998).........................19

*Josifoski v. Austrian Airlines Osterreichische Luftverkehrs AG*,
801 F. Supp. 3d 737 (E.D. Mich. 2025) ...........................................................14

*Magan v. Lufthansa German Airlines*,
339 F.3d 158 (2d Cir. 2003) .............................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..........................................................................................13

*McCroy v. Coastal Mart, Inc.*,
207 F. Supp. 2d 1265 (D. Kan. 2002)...............................................................21

*McMahon v. Bunn-O-Matic Corp.*,
No. 3:96-CV-538RP, 1997 WL 873829 (N.D. Ind. Nov. 10, 1997) .................19

*Morris v. Starbucks Corp.*,
No. 1:18-CV-5034-TWT, 2019 WL 7496785 (N.D. Ga.
Sept. 27, 2019) ..........................................................................................19,20,21

*Oubre v. E-Z Serve Corp.*,
713 So. 2d 818 (5th Cir. 1998) .........................................................................20

*Selke v. Germanwings GmbH*,
261 F. Supp. 3d 666 (E.D. Va. 2017) ...............................................................15

iv

*Sethy v. Malev-Hungarian Airlines, Inc.*,
No. 98 CIV. 8722 (AGS), 2000 WL 1234660 (S.D.N.Y. Aug. 31, 2000)....17,19

*Siddiq v. Saudi Arabian Airlines Corp.*,
No. 6:11-CV-69-ORL-19GJK, 2013 WL 2152566 (M.D. Fla. Jan. 9, 2013)....16

*Singh v. Caribbean Airlines Ltd.*,
49 F. Supp. 3d 1108 (S.D. Fla. 2014).................................................................26

*Sook Jung Lee v. Korean Air Lines Co.*,
No. SACV 10-01709-JVS (MLGx), 2012 WL 1076269 (C.D. Cal.
Mar. 21, 2012)......................................................................................................18

*Vanderwall v. United Airlines, Inc.*,
80 F. Supp. 3d 1324 (S.D. Fla. 2015).................................................................15

*Wallace v. Korean Air*,
214 F.3d 293 (2d Cir. 2000) ...............................................................................16

*White v. Emirates Airlines, Inc.*,
493 F. App'x 526 (5th Cir. 2012)...................................................................26,27

## Rules

Fed. R. Civ. P. 56 .......................................................................... vii,13,15,22

14 C.F.R. § 121 ...............................................................................10,25

E.D. Mich. L.R. 7.1(d)(2) .................................................................... vii

## Other Authorities

Convention for the Unification of Certain Rules for International Carriage
by Air, May 28, 1999, 2242 U.N.T.S. 309 (Montreal Convention)............*passim*

v

## CONCISE STATEMENT OF THE ISSUE PRESENTED

I.      Whether this Court should grant summary judgment in favor of Delta when Plaintiff cannot satisfy her burden of presenting sufficient admissible evidence showing that an injurious event was an "accident" under Article 17 of the Montreal Convention, which provides Plaintiff's exclusive cause of action.

Delta answers:  Yes.

The Court should answer "Yes."

## STATEMENT OF CONTROLLING AND/OR
## MOST APPROPRIATE AUTHORITIES

Pursuant to E.D. Mich. L.R. 7.1(d)(2), Defendant Delta Air Lines, Inc. provides the following as the controlling and/or most appropriate authority for the relief sought.

### Cases

*Air France v. Saks*, 470 U.S. 392, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985)

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 119 S. Ct. 662 (1999)

### Rules

Fed. R. Civ. P. 56

### Other

Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18, 1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the "Montreal Convention"

## I.    PRELIMINARY STATEMENT

Defendant Delta Air Lines, Inc. ("Delta") respectfully requests that its contemporaneous Motion to Exclude Opinion Testimony of Plaintiff's Proffered Expert Witness, Kathleen Lord-Jones ("Motion to Exclude") be incorporated into Delta's present Motion for Summary Judgment, and that the Court address the two motions in conjunction and not separately. *See*, *e.g.*, *Boaz v. Vitatoe Aviation, LLC*, No. 21-11386, 2023 WL 4477127 (E.D. Mich. July 11, 2023). To that end, and in the interests of judicial economy, all evidence, authorities, and arguments from Delta's Motion to Exclude are incorporated by reference herein.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    On August 19, 2024, Delta Flight 134 was an international flight from Detroit Metropolitan Wayne County Airport ("DTW") in the United States, to Amsterdam Airport Schiphol in the Netherlands ("Flight 134"). (**Exhibit A:** Flight information DELTA0008) Plaintiff was a passenger on Flight 134. (**Exhibit B:** Hickey, 21:12-15) Plaintiff was flying into AMS to catch a connecting flight to the United Republic of Tanzania, where she was going on a 10-day safari. (**Ex. B:** Pl, 23:11-24:19)

2.    While Flight 134 was over the Atlantic Ocean (**Ex. B:** Pl, 61:18-21), the flight attendants served passengers with a second round of beverages near the

end of the dinner service. (**Exhibit C:** Devries, 48:8-10; **Exhibit D:** Henry-Dauler, 9:21-24)

3.      Two flight attendants working from an aisle cart served the main cabin on aircraft right. (**Ex. C:** Devries, 13:4; **Ex. D:** Henry-Dauler, 9:21-24) Flight attendant Cecila "Lilly" DeVries ("DeVries"), who has been a flight attendant for 29 years, was working from the forward side of the service cart, and flight attendant Kathy Henry-Dauler ("Henry-Dauler"), who has been a flight attendant for 28 years, was working from the aft side of the service cart. (**Ex. C:** Devries, 8:11-14; **Ex. D:** Henry-Dauler, 6:20-24)

4.      Plaintiff was seated in 40J, which is in the main cabin aircraft right at the window. (**Ex. B:** Pl, 27:12-28:4) When DeVries and Henry-Dauler arrived at row 40, Plaintiff ordered a decaffeinated coffee (i.e., "decaf") (**Ex. B:** Pl, 34:17-19) Plaintiff intended for the decaf to be served hot. (**Ex. B:** Pl, 43:20-22) Plaintiff intended to drink decaf with a brownie that remained on her dinner tray. (**Ex. B:** Pl, 34:23-35:1) There was nothing unusual about the dinner tray or tray table at seat 40J. (**Ex. B:** Pl, 47:21-48:2)

5.      On Delta flights, including Flight 134, onboard service includes Starbucks brand coffees, including decaf. Unlike regular coffee, however, decaf coffee is not brewed in the galleys and served by the flight attendants from service carts in the aisle. Instead, decaf is served as a packet of Starbucks instant coffee mix.

(**Ex. B:** Pl, 37:11-15, 39:8-11; **Ex. C:** Devries, 21:17-21, 22:5-7) The packet of decaf is served with a cup of hot water: "just like bringing someone a packet of tea." (**Exhibit E:** Stewart, 35:23-25)

6.     Whether for tea or decaf, flight attendants draw hot water from "water boiler" spigots located in the galleys. (**Ex. C:** Devries, 22:17-19) The flight attendants onboard, including DeVries and Henry-Dauler, do not know the temperature of the water in the water boilers. (**Ex. C:** Devries, 22:24-25; **Ex. D:** Henry-Dauler, 12:22-24, 15:4-10; **Ex. E:** Stewart, 23:7-22, 32:11-13; **Exhibit F:** Angel, 17:2-3) Nevertheless, "[y]es, the water was hot. That's how you make the coffee." (**Ex. E:** Stewart, 34:21-22) Passengers expect the coffee to be hot; if anything, they complain that it is not hot enough. (**Ex. E:** Stewart, 33:10-34:1)

7.     In fact, water inside the water boilers is stored between 180°F and 196°F.[2] (**Exhibit G:** On-Board Manual DELTA1821) There is no evidence that the flight attendants or any other Delta employees could adjust the water temperature in the water boilers.

8.     According to Starbucks' "Brewing Guide: How to Make the Perfect Instant Coffee," proper preparation of its instant coffee, including the instant decaf coffee served to Plaintiff, requires "hot water at **185 degrees Fahrenheit**." (*See*

---

[2] Delta neither makes the Airbus A330-333 aircraft nor the onboard water boilers, which are designed and manufactured by third parties.

3

https://athome.starbucks.com/brewing-guide/how-make-perfect-instant-coffee-hot-or-iced (emphasis added)(**Exhibit H**); *see also* **Exhibit I**: O'Connell Declaration)

9. When Plaintiff ordered decaf, DeVries left the service cart and retrieved a cup of hot water from the forward galley.[3] The forward galley is over 14 rows ahead of Plaintiff.[4] (**Ex. D:** Henry-Dauler, 14:17-20) There is no evidence of any relevant maintenance problems with the water boiler in the forward galley, whether before or after Flight 134. (**Exhibit J:** Coffee Maker Write Ups DELTA1823-1827)

10. DeVries returned one to two minutes later and handed Plaintiff a cup of hot water and packet of instant decaf. (**Ex. B:** Pl, 35:13-17; **Ex. D:** Henry-Dauler, 11:15-21) Passengers who order decaf are served with a separate cup of hot water and packet of decaf so they can mix their preferred strength of coffee. (**Ex. C:** Devries, 44:14-18; **Ex. D:** Henry-Dauler, 12:9-13) Plaintiff did not ask the flight attendants to either open the packet or mix the instant coffee into the cup of hot water. (**Ex. B:** Pl, 41:8-13)

11. Like other airlines, Delta does not serve lids with its beverages. (**Ex. C:** Devries, 26:1; **Ex. D:** Henry-Dauler, 16:7; **Ex. E:** Stewart, 31:21-24) Plaintiff has ordered coffee on Delta flights both before and after the subject incident, and she

---

[3] DeVries denies that she retrieved a cup of hot water from the galley and served it to Plaintiff. (**Ex. C:** Devries, 12:20-25) However, whether DeVries or another flight attendant retrieved the cup of hot water and served it to Plaintiff is immaterial.
[4] Delta's A330 aircraft do not have rows numbered 23-29.

never received a cup with a lid. (**Ex. B:** Pl, 16:25-17:3, 19:23-20:8) Plaintiff did not expect to receive a lid with the decaf she ordered on Flight 134. (**Ex. B:** Pl, 38:20-23)

12.     Plaintiff saw that the water in her cup was "clear with a few bubbles," had some steam "like you would see in hot water," and felt "warm" in her hand. (**Ex. B:** Pl, 40:4-7, 43:13-16, 178:3-11) Plaintiff expected, was aware, and knew that the water was hot when it was served to her. (**Ex. B:** Pl, 40:8-10, 43:17-19, 175:20-176:4)

13.     There is no evidence of any turbulence or other unexpected movement of the aircraft at any relevant time.

14.     The cup of hot water sat on Plaintiff's tray table for one to two minutes while she waited for it to "cool down" and attempted to open the decaf packet. (**Ex. B:** Pl, 49:9-12, 168:7-11) While attempting to open the packet, Plaintiff bumped the cup with her hand, and the hot water spilled onto her lap. (**Ex. B:** Pl, 59:10-13; **Ex. C:** Devries, 32:3)

15.     Plaintiff testified that a cup bumped by her was likely to spill. (**Ex. B:** Pl, 102:16-22, 104:9-12) Plaintiff admits, had she not bumped the cup, she would not have been injured. (**Ex. B:** Pl, 103:23-104:1) Plaintiff's act of bumping the cup was the only cause of the spill; nothing external to Plaintiff caused the spill. (**Ex. B:** Pl, 59:17-23, 79:13-16)

16.    Plaintiff does not know the usual temperature range at which restaurants or airlines usually serve hot coffee. (**Ex. B:** Pl, 63:17-64:6, 176:12-24). Plaintiff does not know the temperature range or duration of time for hot water cause a burn to human skin. (**Ex. B:** Pl, 63:13-16, 66:17-24)

17.    Plaintiff does not know the temperature of the water either at the time it was served or at the time it spilled. (**Ex. B:** Pl, 62:20-63:2) Because Plaintiff does not know the temperature of the water, she does not know whether the water served to her on Flight 134 was unusually or unexpectedly hot. (**Ex. B:** Pl, 180:22-181:2)

18.    Plaintiff told Henry-Dauler she "spilled some hot water on her lap and might have been burned." (**Ex. D:** Henry-Dauler, 10:18-20) Plaintiff, did not report the breadth of the spill or state that she was injured or in pain. (**Ex. C:** Devries, 37:1)

19.    Delta does not have a formal policy or procedure for when some hot water spills on a passenger. Nevertheless, the general protocol is for flight attendants to offer to assist the passenger out of wet clothing, offer galley wipes (i.e., towels); and offer ice packs/cold water. (**Ex. C:** Devries, 16:12-17:7, 27:22-28:10)

20.    Consistent with this protocol, DeVries and Henry-Dauler both "immediately" offered to assist Plaintiff out of her wet pants, offered napkins and galley wipes, and offered ice packs/cold water. (**Ex. C:** Devries, 17:24-18:5, 33:12-15, 35:3-11, 36:12-18; **Ex. D:** Henry-Dauler, 13:17-14:6, 17:10-17)

6

21. Plaintiff does not recall but does not deny that the flight attendants advised her to get out of her seat and go to the lavatory, where she could remove her wet pants and assess the nature and extent of potential burns, if any. (**Ex. B:** Pl, 86:22-87:2)

22. Plaintiff could have gone to the lavatory to remove the pants that were wet with hot water and assess whether and to what extent she was actually burned; however, Plaintiff chose to stay in her seat. (**Ex. B:** Pl, 81:17-22)

23. In fact, Plaintiff twice denied DeVries's and Henry-Dauler's offers, and said, "I don't need anything." (**Ex. C:** Devries, 43:5-6; **Ex. D:** Henry-Dauler, 17:10-19:8) Henry-Dauler "did not see [Plaintiff] showing any urgency or moving out of her seat at all." (**Ex. D:** Henry-Dauler, 18:25-19:1) "At that point I told [Plaintiff] to let me know if she needed assistance. And she said 'okay.'" (**Ex. D:** Henry-Dauler, 19:5-7)

24. Plaintiff earned a bachelor's degree, master's degree, and Ph.D. in nursing. (**Ex. B:** Pl, 10:19-25) Plaintiff has worked as a nurse at the University of Michigan Health System for over 45 years. (**Ex. B:** Pl, 12:23-13:3) Additionally, Plaintiff knows that, it is not unusual or unexpected that a spilled cup of hot coffee can cause burn injuries. (**Ex. B:** Pl, 104:9-17) Furthermore, Plaintiff knows that the longer hot water stays on the skin, the more likely it is to cause a burn. (**Ex. B:** Pl, 67:24-68:5)

25.     Nevertheless, Plaintiff refused the flight attendants' offers to go to the lavatory to remove her wet pants; "She didn't think it was necessary to change her clothes." (**Ex. E:** Stewart, 27:14-25). Again, Plaintiff chose to stay in her seat, where she "was pulling the material [of her pants] up from her skin" and "applying napkins between [her] skin and [clothing] material." (**Ex. B:** Pl, 80:13-14, 87:18-88:1, 183:6-10)

26.     Plaintiff alone decided to treat herself by placing napkins between her wet pants and her skin. (**Ex. B:** Pl, 82:25-83:9, 183:6-10) Although her sense of time was "warped," Plaintiff "guesses" that she treated herself with napkins for "at least 30 minutes." (**Ex. B:** Pl, 80:13-25) During this 30-minute period, Plaintiff also self-treated by applying a Vaseline-based lotion to her skin. (**Ex. B:** Pl, 88:2-9)

27.     Plaintiff does not recall whether she requested that the flight attendants page for medical assistance when they provided the napkins. (**Ex. B:** Pl, 151:3-7) Nevertheless, DeVries and Henry-Dauler denied that Plaintiff asked them to page for medical assistance at that time. (**Ex. C:** Devries, 48:16-19; **Ex. D:** Henry-Dauler, 19:5-8)

28.     After about 30 minutes, Plaintiff pressed the flight attendant call button, and Henry-Dauler responded. It was only then that Plaintiff reported to be injured: "she felt she had been burned" and "was starting to get blisters." (**Ex. D:** Henry-Dauler, 19:13-16). Plaintiff also asked Henry-Daulter to page for the assistance of

8

any onboard medical professionals. (**Ex. B:** Pl, 88:10-89:1; **Ex. D:** Henry-Dauler, 19:13-16)

29.     While Delta does not have policy for when a cup of hot water spills on a passenger, it does have a formal procedure for when a passenger is injured: i.e., a medical emergency. (**Ex. E:** Stewart, 38:5-19; **Ex. F:** Angel, 13:19-22, 27:23-25, 39:2-8, 42:2-5)

30.     Pursuant to Delta's policies and procedures, Plaintiff's statement confirming that she was burned and was starting to get blisters, along with her specific request for medical assistance, triggered the involvement of the onboard purser, Stacy Stewart ("Stewart"). (**Ex. D:** Henry-Dauler, 19:21-25; **Ex. E:** Stewart, 5:16-23)

31.     Consistent with Delta's policies and procedures for in-flight medical events, Stewart immediately paged for the assistance of any onboard medical personnel. (**Ex. E:** Stewart, 11:1-6) At least three onboard medical professionals responded: a doctor, a nurse, and a nurse practitioner. (**Ex. E:** Stewart, 11:1-6) Additionally, Henry-Dauler initiated contact with MedAire, which is Delta's third-party vendor for providing assistance and direction for in-flight medical events. (**Ex. D:** Henry-Dauler, 20:16-19; **Ex. F:** Angel, 14:1-3)

32.     The onboard medical professionals treated Plaintiff with gauze from the first-aid kit and antibiotic cream from a fellow passenger. (**Ex. B:** Pl, 75:17-22)

9

Plaintiff also took Tylenol from her own bag. (**Ex. B:** Pl, 92:4-9; **Ex. E:** Stewart, 29:11-14, 31:11-13)

33.    Plaintiff requested burn cream. (**Ex. C:** Devries, 39:6-9). However, airlines are not required to include burn cream in either first-aid kits or emergency medical kits (*See* 14 C.F.R. § 121, App. A (listing the contents of onboard first-aid kits and EEMKs, which does not include burn cream); *see also* **Ex. C:** Devries, 15:14-16, 16:1-2; Henry-Dauler, 9:8-11)

34.    Furthermore, the flight attendants reseated the adjacent passenger in 40H so Plaintiff would have more room and comfort. (**Ex. D:** Henry-Dauler, 24:7-9)

35.    Moreover, Delta arranged for Plaintiff to be met by EMS and a wheelchair upon arrival at AMS, where she received additional treatment from a medical clinic in the airport. (**Ex. B:** Pl, 68:19-69:1, 78:17-79:1)

36.    Plaintiff continued onto her connecting flight to Tanzania, where she spent her vacation for the entire 10 days of her planned safari. (**Ex. B:** Pl, 23:11 - 24:19) Plaintiff self-treated on vacation with medical supplies purchased in Tanzania: additional gauze, burn cream, coconut oil, and antibiotic powder. (**Ex. B:** Pl, 97:5-15)

37.    After her 10-day safari and upon her return to Michigan, Plaintiff had one visit to an emergency room and one visit with a burn specialist. (**Ex. B:** Pl,

108:2-110:18) Plaintiff completed all treatments for her burns within two months after the injury on August 19, 2024. (**Ex. B:** Pl, 134:19-22) Plaintiff has scars on her thighs and abdomen from the hot water she spilled on herself during Flight 134. (**Ex. B:** Pl, 116:20-117:11, 135:6-17)

38.     There is no evidence that other passengers or crewmembers complained of or were burned by any hot coffee, tea, or water served on Flight 134.

## III.    PLAINTIFF'S CLAIMS AND RELEVANT PROCEDURAL HISTORY

Plaintiff's Complaint raises two claims against Delta: (1) ordinary negligence, and (2) Article 17 of the Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18, 1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty): i.e., the "Montreal Convention."

As a matter of law, Plaintiff's claim for ordinary negligence is federally preempted by the Montreal Convention. Accordingly, Plaintiff's claim for ordinary negligence should be dismissed with prejudiced.

Plaintiff's claim under the Montreal Convention should be dismissed with prejudice because Plaintiff cannot satisfy her burden of showing that her burn was caused by an Article 17 "accident."

During discovery, Plaintiff disclosed a self-styled "Aviation Cabin Safety Expert," Kathleen Lord-Jones ("Lord-Jones"), to provide opinion testimony

11

regarding the causes of her injuries. Lord-Jones's expert report offered two "findings" of unexpected or unusual events: **(1) Delta served hot water "at an unexpectedly high temperature"**; and **(2) Delta did not provide "appropriate medical care in a timely manner" for Plaintiff's injuries**. However, as discussed in Delta's Motion to Exclude and herein, Lord-Jones's opinions lack foundation, are inadmissible, and cannot support a finding of an Article 17 accident.

Also during discovery, Delta disclosed a retained biomechanical accident reconstruction and injury analysis expert, David M. Fortenbaugh, Ph.D., ASP. Dr. Fortenbaugh submitted a report (**Exhibit K**), wherein he observed that the temperature of hot water dispensed on Delta flights is consistent with, if not slightly lower than, standard temperatures for brewing coffee or tea. (*Id*. at 14). Additionally, Dr. Fortenbaugh observed that the hot water served to Plaintiff on Flight 134 was within the usual and expected temperature range for hot beverages. (*Id*. at pg. 25)

Additionally, on December 10, 2025, Plaintiff submitted to a physical examination by Delta's retained burn reconstruction expert, Ramsey J. Choucair, M.D., who subsequently issued expert reports. (**Exhibits L, M**) In relevant, part, Dr. Choucair concluded that Plaintiff's injuries and scarring were usual and expected following the spill of an ordinary hot beverage, such as coffee. (*Id*. at pg. 2) Dr. Choucair also concluded that the injury and scarring process were instantaneous and

12

could not be prevented or improved by any available onboard treatments, including gauze bandages or burn cream. (*Id.* at pg. 2)

Plaintiff did not depose Drs. Fortenbaugh or Choucair or disclose any rebuttal experts, and all discovery is now closed. (ECF No. 11)

## IV.    SUMMARY JUDGMENT STANDARDS

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating the absence of any dispute as to a material fact, with all inferences being made in favor of the nonmoving party. *Id.* at 323. Once the moving party meets its burden, the burden then shifts to the nonmoving party to present specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the nonmoving party must come forth with sufficient evidence for which a jury could reasonably find for that party, and a mere "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

13

## V.    PREEMPTIVE EFFECT OF THE MONTREAL CONVENTION

### a. The Montreal Convention Provides the Exclusive Cause of Action for Bodily Injuries Occurring on International Flights.

The Montreal Convention is an international treaty that "establishes a comprehensive regime governing liability arising from international air carriage." *Avalon Techs., Inc. v. EMO-Trans, Inc.*, No. 14-14731, 2015 WL 1952287, at *2 (E.D. Mich. Apr. 29, 2015); *see also* **Exhibit N**: Montreal Convention ("M.C"). The Montreal Convention is applicable to all "international carriage" of persons performed by aircraft for reward. M.C., Art. 1(1). "International carriage" is defined as any carriage in which "the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated...within the territories of two States Parties." *Id*. at Art. 1(2).

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." M.C., Art. 1(1). "In the carriage of passengers, baggage and cargo, any action for damages, however founded…can **only** be brought subject to the conditions and such limits of liability as are set out in this Convention. (*Id*. at Art. 29) (emphasis added). Thus, the Montreal Convention "preempts claims falling within its scope." *Atia v. Delta Air Lines, Inc.*, 692 F. Supp. 2d 693, 699 (E.D. Ky. 2010); *Josifoski v. Austrian Airlines Osterreichische Luftverkehrs AG*, 801 F. Supp. 3d 737, 742 (E.D. Mich. 2025) (citing *Garrisi v. Nw. Airlines, Inc.*, No. 10-12298, 2010 WL 3702374, at *5 (E.D. Mich. Sept. 16, 2010).

14

Article 17 of the Montreal Convention (discussed *infra*) states that a carrier is liable for bodily injury of a passenger upon condition that the accident which caused the injury took place on board the aircraft. *Id.* at Art 17(1) Therefore, state law negligence claims for bodily injuries occurring onboard during international carriage are preempted by the Montreal Convention and should be dismissed with prejudice. *See e.g.*, *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 24 (1st Cir. 2020) ("When an airline passenger suffers 'bodily injury…on board [an] aircraft…his or her only legal recourse is to sue the airline for recovery under the Montreal Convention…that preempts any other local law claims the passenger could bring."); *Vanderwall v. United Airlines, Inc.*, 80 F. Supp. 3d 1324, 1335 (S.D. Fla. 2015) ("Because Plaintiff's common law negligence claim…is preempted by the Montreal Convention, it is dismissed with prejudice."); *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 666, 671 (E.D. Va. 2017) ("The Court grants defendant's Rule 56 motion for summary judgment because the Montreal Convention expressly preempts any claim for state law negligence.").

### b. Plaintiff's Negligence Claim is Preempted by the Montreal Convention and Should Be Dismissed With Prejudice.

Here, Plaintiff's carriage began and ended at Detroit Metropolitan Wayne County Airport, in the United States, with agreed stopping places in the Netherlands and the United Republic of Tanzania. (ECF No. 1, PageID.3) The United States, the Netherlands, and the United Republic of Tanzania are all parties to the Montreal

15

Convention.   *See*   https://treaties.un.org/Pages/showDetails.aspx?objid=0800000 280078e04. Thus, Plaintiff's flight was "international carriage" under Article 1(2). Plaintiff claims that she suffered bodily injuries while onboard and during the international flight. Thus, Montreal Convention applies and governs Plaintiff's claims against Delta. Accordingly, Plaintiff's action must only be brought subject to the Montreal Convention.

Plaintiff's state law negligence claim clearly falls within the scope of the Montreal Convention, so it is preempted as a matter of law. Therefore, Plaintiff's negligence claim should be dismissed with prejudice.

## VI.   LIABILITY STANDARDS UNDER ARTICLE 17 OF THE MONTREAL CONVENTION

To prevail on a bodily injury claim under Article 17, a plaintiff bears the burden of establishing the occurrence of an "accident" within the meaning of the Montreal Convention. *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-CV-69-ORL-19GJK, 2013 WL 2152566, at *5 (M.D. Fla. Jan. 9, 2013) (citing M.C., Art. 17; *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985)). Because a passenger must prove that an "accident" occurred, Article 17 of the Montreal Convention does ***not*** impose strict liability. *See Wallace v. Korean Air*, 214 F.3d 293, 297 (2d Cir. 2000) ("The essential predicate of carrier liability is the occurrence of an 'accident'"); *Furuta v. Hawaiian Airlines Inc.*, No. CV 19-00617 JAO-KJM, 2022 WL 3645764, at *5 (D. Haw. Aug. 24, 2022) (citing *Saks*, 470 U.S.

16

at 407) ("[P]rovisions in the Convention…operate to qualify liability, such as…the 'accident' requirement of Article 17.")); *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003) ("[I]n order for an airline to be liable for a passenger's injury, the injury must be caused by an "accident.").

An "accident," however, is not defined in Article 17 or elsewhere in the Montreal Convention. *Saks*, 470 U.S. 392 at 405-06. Instead, the Supreme Court has defined an Article 17 "accident" as an injury "caused by **an unexpected or unusual event or happening that is external to the passenger**." *Saks*, 470 U.S. at 405 (emphasis added). Conversely, the Supreme Court has held that an Article 17 "accident" does **not** occur "where the injury results from the passenger's own internal reaction to the **usual, normal, and expected operation**" of the airline or aircraft. *Id.* at 406 (emphasis added). That is, despite the fact that an injury occurred, there is no Article 17 "accident" where the injury is not caused by any circumstance that was "usual, normal, and expected." *Id.*

Importantly, the Montreal Convention provides the *exclusive* cause of action for injuries caused by an accident during international air transportation. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 119 S. Ct. 662, 668 (1999). Thus, if a plaintiff cannot satisfy the burden of establishing an "accident" within the meaning of the Montreal Convention, then recovery "is not available at all." *Id*.; *see also Sethy v. Malev-Hungarian Airlines, Inc*., No. 98 CIV. 8722 (AGS), 2000 WL

17

1234660, at *4 (S.D.N.Y. Aug. 31, 2000), aff'd, 13 F. App'x 18 (2d Cir. 2001) ("Because plaintiff's alleged injury is not an "accident,"…there is no triable issue of fact...Accordingly, defendant's motion for summary judgment is granted.").

### a.  Objective Standards Determine Whether an Event Is an "Accident"

A plaintiff bears the burden of showing that her injury did not result from her own internal reaction to usual, normal, and expected operations. *Saks*, 470 U.S. 392, 405. Additionally, when determining whether plaintiff has established an Article 17 accident, courts do not view the evidence from plaintiff's perspective – they examine the circumstances **objectively**. *See Husain v. Olympic Airways*, 116 F. Supp. 2d 1121, 1130 (N.D. Cal. 2000), aff'd, 316 F.3d 829 (9th Cir. 2002), aff'd, 540 U.S. 644, 124 S. Ct. 1221, 157 L. Ed. 2d 1146 (2004) ("inquiry is an objective one, and does not focus on the perspective of the person experiencing the injury").

Courts often look to industry standards and airline policies and procedures in determining whether an event is objectively "unexpected or unusual." *Sook Jung Lee v. Korean Air Lines Co*., No. SACV 10-01709-JVS (MLGx), 2012 WL 1076269, at *5 (C.D. Cal. Mar. 21, 2012). "[A] plaintiff's unusual reaction…any procedure that is conducted in the routine and expected manner," is not an accident within the meaning of Article 17. *Fishman by Fishman v. Delta Air Lines, Inc*., 132 F.3d 138, 143 (2d Cir. 1998). Thus, "an individual nauseated by a bumpy ride or standard airline fare," "a person squeamish about a pre-flight search," the presence of a bag

in or near the aisle during the boarding process, or circumstances were "[n]othing happened during the otherwise ordinary flight that involved actions of anyone, except the passenger herself" is not an accident under Article 17. *Sethy*, 2000 WL 1234660, No. 98 Civ. 8722(AGS), at \*4; *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 663 (S.D.N.Y. 2001) ("*Fulop I*").

### b.  Industry-Standard Temperature Ranges for Hot Coffee

As numerous courts have recognized, "'heat is an inherent feature of a cup of coffee' and it is expected that coffee will be served at a temperature hot enough to cause burns." *Morris v. Starbucks Corp*., No. 1:18-CV-5034-TWT, 2019 WL 7496785, at \*4 (N.D. Ga. Sept. 27, 2019) (compiling cases); *see also Greene v. Boddie-Noell Enterprises, Inc*., 966 F. Supp. 416, 419 (W.D. Va. 1997) ("[Coffee] must be sold hot enough to be palatable to consumers, even though it is hot enough to burn other parts of the body."); *Holowaty v. McDonald's Corp*., 10 F. Supp. 2d 1078, 1085 (D. Minn. 1998) ("The average consumer understands that coffee is hot, and that it will cause burns if it comes into contact with skin. The danger of burns remains apparent, even if the degree of injury is more serious than contemplated."); *McMahon v. Bunn-O-Matic Corp*., No. 3:96-CV-538RP, 1997 WL 873829, at \*11 (N.D. Ind. Nov. 10, 1997), aff'd, 150 F.3d 651 (7th Cir. 1998) ("The danger that spilled hot coffee can burn is a recognized condition…The degree of burns is irrelevant.") (citations omitted); *Immormino v. J & M Powers, Inc*., 91 Ohio Misc.

19

2d 198, 203; 698 N.E.2d 516, 519 (Ohio Com. Pl. 1998) ("[T]he law should not lose sight of the commonly understood events of day-to-day life. A hot cup of tea is still a hot cup of tea…Given this constant, it seems to this court that the population of society is thoroughly aware from childhood of the dangers of a hot liquid spill.").

Additionally, numerous courts have acknowledged industry-standard temperature ranges for brewing, holding, and serving hot coffee. *See e.g.*, *Barnett v. Leiserv, Inc.*, 968 F. Supp. 690, 693 (N.D. Ga. 1997), aff'd, 137 F.3d 1356 (11th Cir. 1998) ("The standard brewing temperature for coffee makers in the coffee service industry…ranges from 195 to 205 degrees Fahrenheit."); *Oubre v. E-Z Serve Corp.*, 713 So. 2d 818, 820-21 (5th Cir. 1998) ("[T]he temperature of the water at the time [of brewing] is 195 degrees Fahrenheit, plus or minus 5 degrees."); *Holowaty*, 10 F. Supp. 2d at 1081 ("The optimal temperature for brewing coffee is between 195 and 205 degrees Fahrenheit").

Although not discussed within the context of the Montreal Convention, the foregoing cases are instructive on standard coffee temperatures, as well as proving liability for excessively hot coffee. Consider *Morris v. Starbucks*, *supra*, where the court held that Plaintiff failed to produce,

> more than a scintilla of evidence that the coffee she received on the day of the accident exceeded the temperature at which the Defendant typically brews its coffee. Even accepting as true that the coffee was hotter than "average," a jury could not reasonably infer from that fact alone that the coffee's temperature fell outside the bounds of reasonable brewing temperatures.

20

*Morris*, 2019 WL 7496785, at \*4; *see also McCroy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265, 1272 (D. Kan. 2002) ("[Plaintiffs] failed to present any evidence, expert or otherwise, that the temperature of the drink was actually hotter than acceptable. Instead, plaintiffs asked the jury – and the court – to assume the drink was excessively hot due solely to the fact that [plaintiff] was burned. The court declines to follow plaintiffs' *post hoc, ergo propter hoc* rationale.").

## VII. PLAINTIFF CANNOT PRESENT ANY EVIDENCE OF AN ARTICLE 17 ACCIDENT, WHICH IS AN ESSENTIAL ELEMENT OF PLAINTIFF'S EXCLUSIVE CAUSE OF ACTION.

Plaintiff's injury was not caused by an event that was "unusual or unexpected." Plaintiff testified that she had exclusive control over the cup when she bumped it with her hand, which was expected to cause the spill. (**Ex. B:** Pl, 102:16-22, 104:9-12) Plaintiff's act of bumping the cup was the sole and exclusive cause of the spill; nothing external to Plaintiff caused the spill. (**Ex. B:** Pl, 59:17-23, 79:13-16) Plaintiff admits, had she not bumped the cup, she would not have been injured. (**Ex. B:** Pl, 103:23-104:1) The spill instantly caused a second degree burn, which is usual and expected when a hot beverage spills. (**Exhibit O:** Lord-Jones, pg. 5; **Ex. L:** Choucair, pg. 2) In other words, "[n]othing happened during the otherwise ordinary flight that involved actions of anyone, except the passenger herself." *Fulop I,* 175 F. Supp. 2d at 663 (citing *Saks*, 470 U.S. 392). Thus, Plaintiff's act of spilling hot water on herself and being injured is not an Article 17 accident.

21

**a. Plaintiff Cannot Present Competent Evidence Showing That the Water Served By Delta Was Hotter Than the Usual and Expected Range of Temperatures for Hot Beverages.**

Plaintiff baldly alleges that Delta served "excessively hot water at a dangerous temperature above industry standards," which was an "unexpected and unusual" event or happening. (ECF No. 1, PageID.7-8 ¶¶ 36(c), 38) That is, Plaintiff claims that "excessively hot water" Delta served to Plaintiff constitutes an Article 17 "accident." It is not Delta's burden to show that the water was served at a usual and expected temperature for hot beverages (although that is precisely what the evidence shows). Instead, Plaintiff alone bears the burden of showing that the water was served at an objectively ***un*usual and *un*expected** temperature. The ***only*** evidence Plaintiff proffers are the opinions of her retained liability expert, Lord-Jones. For the reasons set forth in Delta's contemporaneous Motion to Exclude, Lord-Jones's findings regarding the water temperature lack foundation, are inadmissible, and cannot sustain Plaintiff's burden of proof.

Plaintiff cannot present any evidence, expert or otherwise, that Delta served excessively hot water at a dangerous temperature above industry standards. Thus, Plaintiff cannot satisfy her burden of proving an Article 17 accident. Therefore, recovery "is not available at all," and Delta is entitled to summary judgment under Fed. R. Civ. P. 56. *Tseng*, 525 U.S. at 161.

**b. Plaintiff Cannot Present Any Competent Evidence Showing That Delta did not provide "appropriate medical care in a timely manner" for Plaintiff's injuries.**

Delta does not have an established policy or procedure for handling hot beverage spills. (**Ex. F:** Angel, 27:23-25; 28:15-22; 45:25-46:1) However, the evidence shows that Delta has a formal procedure for responding to in-flight injuries and other medical events (**Ex. F:** Angel, 13:19-22; **Ex. E:** Stewart, 38:16-19, 39:9-12), which Delta's flight crew strictly followed and did not violate in this case. (**Ex. D:** Henry-Dauler, 20:3-10, 16-19; **Ex. E:** Stewart, 38:16-19).

Given these facts, Plaintiff again attempts to rely on Lord-Jones to satisfy her burden of proving an Article 17 accident. Lord-Jones's second "finding" of an unusual and unexpected event is that Delta failed to provide "appropriate medical care in a timely manner." (**Ex. O** at pg. 8) For several reasons, however, Delta's provision of medical care cannot be an Article 17 accident as a matter of law.

First, under the plain language of Article 17(1), the "accident" must "cause" the "injury." M.C. Art. 17(1) ("The carrier is liable for…bodily injury of a passenger upon condition only that **the accident which caused the…injury** took place on board the aircraft…")(emphasis added). Again, Plaintiff admits that she caused her own injury by accidentally bumping and spilling the cup of hot water on herself. (**Ex. B:** Pl, 103:23-104:1) As conceded by Lord-Jones, Plaintiff's burn was "instantaneous." (**Ex. O** at pg. 5) Delta's retained burn expert, Dr. Choucair, agrees

23

that, "[h]ot beverages such as coffee, tea or hot cocoa would be expected to cause second or third-degree burns within a few seconds." (**Ex. L** at pg. 2) Plaintiff did not request and Delta could not provide any medical care "within a few seconds" of Plaintiff's injury. Thus, Delta's allegedly inappropriate and untimely medical care did not and could not cause Plaintiff's injury.

Nor could Delta provide any appropriate or timely medical care for Plaintiff's in the minutes immediately following her injury. At that time, Plaintiff had the burden of communicating her needs to the crew. *See Fulop v. Malev Hungarian Airlines*, 244 F. Supp. 2d 217, 223 (S.D.N.Y. 2003) ("*Fulop II*") ("Since only the sick passenger can truly know in-flight how seriously ill he feels…the burden must fall on him to convey his concerns to the crew…") Plaintiff said "she had spilled some hot water on her lap and might have been burned." (**Ex. D:** Henry-Dauler, 10:18-20) Plaintiff, however, did not say she was burning, burned, injured or in pain. Plaintiff did not request medical assistance when the flight attendants provided napkins. (**Ex. B:** Pl, 151:3-7; **Ex. C:** DeVries, 35:3-9, 37:1, 43:5-6; **Ex. D:** Henry-Dauler, 18:10-16, 19:5-7) Plaintiff refused multiple requests and opportunities to go to the lavatory to remove her wet pants, confirm whether and to what extent she was burned, and decide whether she needed medical assistance. (**Ex. C:** DeVries, 28:25-29:7, 34:2-3, 35:3-9, 36:12-18; **Ex. D:** Henry-Dauler, 14:1-6, 17:14-17, 17:22-19:6) Plaintiff did not show any urgency and refused further assistance. (**Ex. D:** Henry-

24

Dauler, 18:25-19:1) Clearly, Plaintiff did not communicate and the crew could not appreciate the nature or extent of Plaintiff's injury at that time. A reasonable person hearing Plaintiff's statements and witnessing her conduct "would not necessarily have interpreted it as indicating that a dire emergency demanding such an extraordinary response was involved." *Fulop*, 244 F. Supp. 2d at 223.

Thereafter, Plaintiff complains about the alleged 30-minute "delay" before the purser paged onboard medical professionals. However, Plaintiff admitted that she simply waited 30 minutes before again asking for any assistance from the flight attendants. After waiting 30 minutes, Plaintiff simply pushed the flight attendant call button, stated that "she felt she had been burned" and "was starting to get blisters," and expressly requested medical assistance (**Ex. B:** Pl, 88:10-89:1; **Ex. D:** Henry-Dauler, 19:13-16) The crew immediately responded by enacting its procedures for in-flight medical events. (**Ex. D:** Henry-Dauler, 20:3-10) If Plaintiff did not get the medical care she believe she needed or requested, then nothing prevented her from pushing the call button earlier.

Plaintiff also complains about the lack of burn cream and the small gauze bandages available to the onboard medical professionals. However, the contents of Delta's onboard first-aid kit and EEMK's are prescribed by federal regulation. *See* 14 C.F.R. § 121, App. A (listing the contents of onboard first-aid kits and EEMKs, which does not include burn cream). Additionally, Dr. Choucair opines that the

"application of…bandages, burn cream or other treatments after the initial injury would not prevent the burn from becoming a second degree burn" or "prevent scarring." In other words, there was nothing Delta could do to ameliorate or mitigate Plaintiff's instantaneous injury. *See Singh v. Caribbean Airlines Ltd.*, 49 F. Supp. 3d 1108, 1118-19 (S.D. Fla. 2014), nom., 798 F.3d 1355 (11th Cir. 2015)("The [flight] attendants' error in administering a single nitroglycerin tablet is not such an unusual or unexpected response so as to constitute an 'accident.' This is borne out by the medical testimony indicating the administration of a single tablet had negligible effect on [plaintiff's] condition.").

Even if a scintilla of evidence supported such a finding, cases construing a flight crew's "arguably imperfect response to a passenger's medical emergency" does not constitute an Article 17 accident. *White v. Emirates Airlines, Inc*., 493 F. App'x 526, 531 (5th Cir. 2012). In *White*, *supra*, the evidence showed that the crew "took action to assist" the ailing plaintiff, including providing oxygen, alerting the captain, and arranging for medical assistance once the plane arrived. *Id*. Yet the plaintiff faulted "the flight crew for failing to do more." *Id*. The court, however, declined to find that any such failure constituted an Article 17 accident. *Id*. Likewise here, Delta provided napkins, encouraged Plaintiff to go to the lavatory to remove her wet clothing, alerted the captain, paged for onboard medical personnel, communicated with MedAire, provided first aid supplies, moved Plaintiff's seatmate

26

to provide more room and comfort, and arranged for EMS to meet Plaintiff upon arrival at AMS. (**Ex. B:** Hickey, 78:17-79:1; **Ex. C:** DeVries, 28:25-29:7, 34:2-3, 35:3-9, 36:12-18; **Ex. D:** Henry-Dauler, 14:1-6, 17:14-17, 17:22-19:6, 24:7-9) As in *White*, there is no basis for finding an Article 17 accident simply because Plaintiff claims that Delta's flight crew failed to do more.

## VIII.  CONCLUSION

For the foregoing reasons, the Court should grant Delta's Motion, enter summary judgment in its favor and against Plaintiff, dismiss Plaintiff's action with prejudice, and grant Delta any other and further relief deemed appropriate.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

Dated:  March 31, 2026        By:   /s/ Timothy J. O'Connell

Scott R. Torpey (P36179)
Timothy J. O'Connell (P79737)
*Attorneys for Defendant Delta Air Lines, Inc.*
27777 Franklin Rd., Ste. 2500
Southfield, MI  48034-8214
(248) 351-3000
storpey@taftlaw.com
toconnell@taftlaw.com

198457761

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which sent notification of such filing upon all ECF Participants.

/s/ Timothy J. O'Connell
Timothy J. O'Connell (P79737)
toconnell@taftlaw.com

28